UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

QUENTIN LaGRANDE,

                        Plaintiff,

      v.                                                                                     00-CV-01195

KEY BANK NATIONAL ASSOCIATION,

                        Defendant,
_____

APPEARANCES:                                            OF COUNSEL:

QUENTIN LaGRANDE,
Plaintiff *pro se*
276 Sheridan Avenue
Albany, NY 12210

NIXON PEABODY
Attorneys for Defendant
Omni Plaza
Suite 900
30 South Pearl Street
Albany, NY 12207

HOWARD G. MUNSON, SR. J.

                                        MEMORANDUM DECISION AND ORDER

      The court first notes, that in an order filed September 7, 2000, Judge Thomas J. McAvoy, consolidated LaGrande I, No. 1: 1:00-CV-1195 as lead case and LaGrande II, No. 2:5:00-CV-1300 as a member case. The order further directed plaintiff to file an amended complaint that "must contain a caption that clearly identifies, by name, each individual and/or entity that plaintiff is suing in the present law suit," and that "any defendant not named in such pleading shall not be defendants in the instant action. Id. at 6-7. When plaintiff named Key Bank National as the sole defendant in his amended complaint, Judge McAvoy, in an order dated

October 31, 2000, dismissed plaintiff's consolidated lawsuit against all of the other defendants in plaintiff's original complaint as well as the defendants in the consolidated member case LaGrande II, No. 2:5:00-CV-1300.

## BACKGROUND

Plaintiff initially filed two complaints in this action on August 8, 2000; a civil rights complaint under 42 U.S.C. §1983, and a complaint under Title VII of the Civil Rights Act of 1964, as amended and codified as 42 U.S.C. § 2000 *et seq*. On examining the complaints, Judge Thomas J. McAvoy found that they appeared to involve common questions of law and/or fact. Specifically, each complaint alleged that while plaintiff was employed by Key Bank, plaintiff was discriminated because of race or gender. Therefore, in an order September 7, 2000, the court consolidated these action, citing Federal Rule of Civil Procedure 42(a). In the same order, Judge McAvoy also found that the complaint did not satisfy the basic pleadings established by the Federal Rules of Civil Procedure, and ordered plaintiff to file a single consolidated amended complaint if he wished to avoid dismissal of his action.

Plaintiff filed an amended complaint on October 6, 2000. It is well-established that an amended complaint supersedes the original and renders it of no legal effect. Harris v. City of New York, 186 F.3d 243, 249 (2d. Cir.1999). Plaintiff's amended complaint alleges "unlawful discriminatory practice relating to employment by issue of differential treatment and suspension because of my race, in violation of Section 296 of the New York State Human Rights Law)," and Title VII of the Civil Rights Act of 1964, as amended, (covers color, creed, national origin, sex relating to employment.

Since plaintiff failed to renew his violation of 42 U.S.C. § 1983 in his amended pleading,

this claim will not be considered by the court. Austin v. Ford Models, Inc., 149 F.3d 148, 155 (2d Cir.1998) (stating that abandonment of claim is a question of intent and that claims not made in amended complaint are waived). However, even if plaintiff had included a § 1983 claim in his amended complaint he would have been unable to satisfy the element of such an action. In order to establish a § 1983 claim, plaintiff must prove that there was a state action involved in the discrimination. Here, there is nothing to suggest that the financial institution defendant is an "instrumentality of the state" or any of its employees were "somehow state actors." Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996).

The amended complaint is a photocopy of a charge of discrimination plaintiff filed with the Equal Employer Opportunity Commission ("EEOC") followed by paragraphs in which plaintiff provides factual information regarding his claim of discrimination. These paragraphs allege; (1) that his time, attendance and work for defendant were satisfactory; (2) that in August 1999, a white female co-worker named Robin filed a complaint with security against him after he refused to socialize with her; (3) Robin's complaint was verbally dismissed, but after this incident, he received undue scrutiny from his white managers, Cheryl Feldman and Tammy Leonard, including questioning co-workers about his behavior, and requiring him to report his location at work at all times, and no white female employees were required to do this; (4) that on October 28, 1999, he was called to the security office, accused of creating a "hit list" of co-workers and supervisors based on reports from Robin, and they would not hear his side of the story; and (5) the white security officer, Bob, used slang language he considered racially derogatory during the interrogation, including "Yo, dissing and buck down." He was eventually suspended, and told not to return until the investigation was completed. On belief and

knowledge, no white female employees have been treated this way.

The amended complaint also alleged, that (1) Lisa Church harassed plaintiff and made sexual inappropriate comments about him, (2) fellow employees Cheryl Feldman, Elizabeth Nagengast, Karen Arhazana, Cecelia MacDormand, Nancy Pollock and Tammy Leonard used racial profanity in his presence.

Defendant states that plaintiff was hired on May 24, 1999, as a Specialist II in Lockbox Services. (Moreno Afft., Ex. J). Virtually from its inception, plaintiff's work was inadequate and his demeanor was unpredictable and bizarre. He was given counseling, warned and reprimanded verbally and in writing. (Moreno Afft., Ex. J; Leonard Afft., Ex. F)(Ex. 1-3); (Feldman Afft. Ex.A). Plaintiff also was given substantial significant additional instruction in an effort to upgrade his work to an acceptable level. (Leonard Afft., Ex. A, ¶ 6). Nevertheless, even though plaintiff had gone through six trainers in two months, his work performance did not demonstrate improvement. While plaintiff did receive a pay raise at one point of his employment, it was not based on his job performance. It resulted from an administrative change in the title of his position from Specialist II to Clerk II, and was unrelated to the proficiency of his work assignments. (Moreno Afft., Ex. 1, Defendant's response to plaintiff's first SDHR's complaint p. 4, ¶ 6).

During this time period, plaintiff's workplace behavior did not improve. He would rock in his chair, laughing out loud to himself for no discernable reason, sing to himself, and make odd statements out of context. (Leonard Afft., Ex. A, ¶¶ 2-3, 11). He also loitered in the vicinity of the women's room for inordinate periods of time, and remained outside the building after work telling his fellow employees that he knew the make, model and licence plate number of

their vehicles. Id. at ¶19; (Docekel Afft. Ex. B (Ex. 7-9)).  Such conduced caused uncomfortableness among his fellow employees, and several complained to Key Bank Human Resources and supervisors concerning it. Id.

On or about October 20, 1999, Key Bank employee Shirley Land reported to Lori A. Giammatei, Senior Human Resources Generalist, that while waiting at the bus stop with plaintiff, he said that he wanted to beat up several of his co-employees. (Docekal Afft. at Ex. B (Ex. 12 & 16)).  In response to this complaint and others from plaintiff's co-employees indicating that they feared for there safety, Key Bank began a probe of these complaints.  On October 28, 1999,Lori Giammatei and Security Officer Robert Mecariello, interviewed plaintiff regarding the complaints' allegations. (Mecariello Afft., Ex. A); (Giammatei Afft., Ex. A).  At the conclusion of the interview, Ms. Giammatei suspended plaintiff from work, with pay, pending a thorough inquiry of his conduct toward his co-employees.  On the same date he was suspended, plaintiff filed a charge against Key Bank with the New York State Division of Human Rights ("SDHR") charging Key Bank with unlawful discriminatory practice relating to employment, because of sex in violation of the Human Rights law of the State of New York.

When Key Bank's internal investigation of plaintiff's conduct ended on December 1, 1999, it found that plaintiff had transgressed at least six of Key Bank's written behavior policies. By letter dated December 1, 1999, Ms. Lori Giammatei detailed these six instances of plaintiff's conduct that violated Key Bank's behavior policies:

1) Initiating inappropriate conversations with other employees involving topics such as violence, rape robbery, unusual personal appearance, drugs, physical abuse, and murder, even though he was counseled on numerous occasions as to appropriate and inappropriate topics of office conversations;

2) Instilling fear in other Key Bank employees by disclosing to them your

>    knowledge of details relating to the cars they drive to and from the workplace;
>
>  3) Instilling fear into other Key Bank employees by making threatening remarks to them, including comments to the effect of "getting revenge," "would like to beat certain people up," and "would like to hit certain people.";
>
>  4) Causing your co-workers to fear for their safety by your loud outbursts and sudden movements;
>
>  5) Attempting to deceive Key Bank's management, Human Resources, and investigators by turning around complaints made against you by pretending that you were the victim and not the perpetrator of the complained of conduct, including false and unsubstantiated claims of harassment against you; and
>
>  6) Lying to your co-workers, management, and investigators causing intended disruption in the workplace.

The letter further advised plaintiff that he was not terminated at the time, but was continued on unpaid suspension pending the result of the completion of the SDHR's investigation into the complaint plaintiff filed with that agency on October 28, 1999 (Moreno Aff., Ex. J).

Plaintiff filed a second charge with the SDHR on December 16, 1999, claiming that his suspension was changed from with pay to without pay after he filed his prior charge with the SDHR. On April 14, 2000, the SDHR found that defendant had not engaged in unlawful discrimination in either case, and the federal Equal Employment Opportunity Commission (EEOC) adopted the SDHR's determinations in these two matters. The present lawsuit ensued.

Currently before the court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Attached to defendant's notice of motion, was a statement explaining to the *pro se* plaintiff in great detail the papers required to be filed to oppose the motion, and the consequences of failing to submit them to the court. The notice

6

contained a statement "that any factual assertions in defendant's affidavits will be taken as true by the District Court unless you contradict these assertions in the affidavit form," and included the complete text of Federal Rule of Civil Procedure 56(e).

Plaintiff has entered opposition to defendant's motion.

## DISCUSSION

The defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that the defendant has asked the court to decide this case without a trial, based on written materials, including affidavits submitted in support of the motion.

Under Rule 56, summary judgment shall be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed.2d 202 (1986). The party moving for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing the absence of a genuine issue of fact. Id. at 323. The burden then shifts to the nonmoving party to present evidence sufficient to support a verdict in its favor on every element of its claim for which it will carry the burden of proof at trial. Id. at 322-23. "If the [nonmoving party's] evidence is ... not sufficiently probative ... summary judgment may be granted."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. Ed. 2d 202 (1986).

In deciding summary judgment motions in discrimination cases, courts must be especially careful to scrutinize proffered evidence because direct evidence of discriminatory intent is seldom available to plaintiffs. Gallo v. Prudential Residential Services, L.P., 22 F.3d 1219, 1224 (2d Cir.1994). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985); Lee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir.1997); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 19 (2d Cir.1995); Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir.1994). Moreover, "[a]lthough pro se plaintiffs are entitled to 'special latitude,' when defending against summary judgment motions, absent a showing of 'concrete evidence from which a reasonable juror could return a verdict in [the non-moving party's] favor,' summary judgment must be granted to the moving party. Evidence which is merely 'colorable, conclusory, speculative or not significantly probative' is insufficient to withstand a summary judgment motion." Jermosen v. Coughlin, 877 F. Supp. 864, 867 (S.D.N.Y.1995) .

The Second Circuit has made it clear that although *pro se* litigants should be afforded leeway, Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96, 30 L. Ed.2d 652 (1972) (*per curiam*), they "generally are required to inform themselves regarding procedural rules and to comply with them," Edwards v. INS, 59 F.3d 5, 8 (2d Cir.1995). This is especially true in civil litigation. McNeil v. United States, 508 U.S. 106, 113 S. Ct. 1980, 124 L. Ed.2d 21 (1993) (suggesting that procedural rules in ordinary civil litigation should not be "interpreted so as to

excuse mistakes by those who proceed without counsel"). Moreover, this is not a case where a *pro se* litigant has stumbled into a snare found only in our case law. LoSacco v. City of Middletown, 71 F.3d 88, 92 (2d Cir.1995).

In short, Rule 56 provides that a party may not oppose summary judgment simply by relying upon the allegations in that party's complaint. Rather, the party must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial. Any witness statements, which may include the party's own statements, must be in the form of affidavits, or by other documentary evidence contradicting the facts asserted by the defendant. A party may submit affidavits that were prepared specifically in response to defendant's motion for summary judgment. If a party does not respond to the motion for summary judgment on time with evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial. Champion v. Artuz, 76 F.3d 483, 485-486 (2d Cir.1996).

Summary judgment is appropriate in discrimination cases, for, "the salutary purposes of summary judgment--avoiding protracted, expensive and harassing trials--apply no less to discrimination cases than ... other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985). The "impression that summary judgment is unavailable in discrimination cases is unsupportable." McLee v. Chrysler Corp., 38 F.3d 67, 68 (1994). The Supreme Court has also reiterated that trial courts should not " 'treat discrimination differently from other ultimate questions of fact.' " Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 2109, 147 L. Ed.2d 105 (2000) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502,

9

524, 113 S. Ct. 2742, 125 L .Ed.2d 407 (1993)).

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his or her burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," *i.e.*, that there was discriminatory intent. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 146, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000); Fields v. N.Y. State Office of Mental Retardation and Developmental Disabilities, 115 F.3d 116, 119 (2d Cir.1997).

In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies on the three-step McDonnell Douglas test. First, a plaintiff must establish a prima facie case of unlawful discrimination by showing that (1) he or she is a member of a protected class (2) who performed his or her job satisfactorily (3) who suffered an adverse employment action, and (4) under circumstances giving rise to an inference of discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973); Stratton v. Department for the Aging, 132 F.3d 869, 879 (2d Cir.1997) (ADEA).

Second, if the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. Reeves, 530 U.S. at 143; Stratton, 132 F.3d at 879.

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." St. Mary's, 509 U.S. at 510-11; James v. N.Y. Racing Association, 233 F.3d 149, 154 (2d Cir.2000). The

burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason. Fields, 115 F.3d at 120-21; Connell v. Consolidated Edison Co., 109 F. Supp.2d 202, 207 (S.D.N.Y.2000).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. It is not sufficient, however, for a plaintiff merely to show that he satisfies "McDonnell Douglas's minimal requirements of a *prima facie* case" and to put forward "evidence from which a fact finder could find that the employer's explanation ... was false." James, 233 F.3d at 153. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination on the basis of race or gender or some other impermissible factor. Id. at 157; Connell, 109 F. Supp.2d at 207-08.

As the Second Circuit observed in James: "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove--particularly discrimination." 233 F.3d at 157; Lapsley v. Columbia University, 999 F. Supp. 506 (S.D.N.Y.1998) (advocating elimination of McDonnell Douglas test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998)("The thick accretion of cases interpreting this burden shifting framework should not obscure the simple principle that lies at the core of anti-discrimination.  In these, as in most other cases, the plaintiff has the ultimate burden of

persuasion.")

In the instant case, the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find discrimination. This is determined by evaluating first plaintiff's evidence, then defendant's evidence, and finally the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is "entitled to view the evidence as a whole." Stern v. Trustees of Columbia University, 131 F.3d 305, 314 (2d Cir.1997); Siano v. Haber, 40 F. Supp.2d 516, 520 (S.D.N.Y.1999), aff'd, 201 F.3d 432 (2d Cir.1999);  Lapsley, 999 F. Supp. at 515.

Plaintiff's Evidence

Plaintiff has submitted only the following evidence in support of his claim: A "signed affidavit" that was neither sworn to, or declared to be given under penalties of perjury in lieu of an affidavit pursuant to 14 U.S.C. §1476.  This document states that the many affidavits of his co-workers and any attachments thereto submitted by defendant are false, and that he never threatened or tried to hurt any co-worker. Another document attached to his Memorandum of Law and Statement of Material Facts, claims that the New York State Division of Human Rights never investigated the true facts that he presented and the investigator he talked to was not interested in finding out what really happened.  That he complained to defendant that he was being harassed by co-workers, but the behavior continued, however, it does not state when, where and to whom he complained; that his job performance was not an issue until he started to report co-workers to "Human Resources;" that defendant never made any allegations of his inappropriate conduct until after he filed his discrimination complaints with state and federal agencies; and that defendants claims are  complete lies and show no merit.

Taken separately or considered as a whole, these unsubstantiated statements, submitted in inadmissable form, are not important and relevant enough to provide sufficient evidence of discrimination by defendant and defeat the summary judgment motion. <u>Liberty Mutual Insurance Company v. Rotches Pork Packers</u>, 969 F.2d 1384, 1388 (2d Cir. 1992)(quoting Fed.R.Civ.P. 56(e)).

Where a nonmoving *pro se* party has not submitted papers in opposition to a motion for summary judgment in an admissible form, summary judgment may be granted as long as the Court is satisfied that the undisputed facts "show that the moving party is entitled to a judgment as a matter of law," and plaintiff has received notice that failure to submit evidence in opposition may result in dismissal of his case. <u>Champion v. Artuz</u>, 76 F.3d 483, 486 (2d Cir.1996). Plaintiff received detailed notice from the defendant that failure to submit evidence in opposition to a summary judgment motion could result in judgment for defendant. Even in the presence of notice, "the issue in each case remains whether from all of the circumstances ... it is reasonably apparent that the litigant understood the nature of the adversary's summary judgment motion and the consequences of not properly opposing it." <u>Sawyer v. American Federation of Government Employees</u>, 180 F.3d 31, 35 (2d Cir.1999). It is reasonably apparent that plaintiff understood his obligation to respond and his burden of producing evidence in opposition. The notice given to plaintiff by defendant regarding his duty to respond to its motion contains all of the terms of the notice that has been approved by the Second Circuit in <u>Champion v. Artuz</u>, 76 F.3d 483, 485-86 (2d Cir. 1996). In addition, plaintiff has demonstrated an understanding of his obligation to communicate with the Court. He has done so on other occasions, for example, by filing a Proposed Joint Civil Management Plan, sent a typed, well written letter to the court concerning

a question of venue, and made a motion requesting Appointment of Counsel.

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own sworn affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial!"

<u>Defendant's Evidence</u>

Defendant has submitted extensive, admissible documentation showing that plaintiff's work performance was substandard, and that he was dismissed from employment due to his disruptive deportment and inappropriate conduct toward co-employees, and not because of his race, gender or for a harassing or retaliatory motive.

Defendant's evidence shows that plaintiff's supervisors asked that he be accountable during work hours because he was not carrying out the duties demanded by his work assignments, was often out of his work area for lengthy time spans, conducted himself in an intrusive and upsetting manner which frightened several of his co-employees; that no other employees were disciplined in the same manner as plaintiff because no other employees had undertaken equivalent behavior; that, contrary to plaintiff's assertions, defendant's record shows that both black and white, male and female employees have been investigated and discharged from employment by defendant for misconduct.

<u>The Record as a Whole</u>

From the outset, the uncontested facts present a weak case of possible discrimination. Plaintiff's period of actual employment was brief. Hired by defendant on May 24, 1999, suspended with pay on October 28, 1999, after an internal investigation, defendant determined that although plaintiff's employment should be terminated at once, he would be continued on

suspension without pay pending the decision on the charges he had filed with the SDHR. In Carlton v. Mystic Transportation, Inc., 203 F.3d 129, 137 (2d Cir.), *cert. denied,* 530 U.S. 121, 120 S. Ct. 2718, 147 L. Ed.2d 983 (2000), the Second Circuit stated that, "Case law teaches that where the termination occurs within a relatively short time after the hiring there is a strong inference that discrimination was not a motivating factor in the employment decision. Grady v. Affiliated Central Inc., 130 F.3d 553, 561 (2d Cir.1997) (eight days between hiring and firing provides strong inference); LeBlanc v. Great American Insurance. Co., 6 F.3d 836, 847 (1st Cir.1993) (under two years, still a significant inference); Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 174-75 (8th Cir.1992) (less than two years, inference still applies); Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991) (six months provides for strong inference)."

In the end, all plaintiff has presented is the mere fact that he was in a protected class and was hired and fired by defendant. Plaintiff has presented no evidence, direct or circumstantial, that his race or gender were factors in the decision to terminate his employment. In contrast, the defendant has presented substantial evidence of its nondiscriminatory reasons for the discharge, and plaintiff has failed to present any evidence to show that these reasons were invalid. Plaintiff merely disputes that his employment conduct was not inappropriate, or that his work was unsatisfactory. Therefore, on this record, a reasonable jury could only find that plaintiff had not met his burden of proving that defendant's decision to terminate his employment was motivated by his race or gender.

Plaintiff's State Law Claims

As there are no longer any claims based on federal law in this action and with due consideration of concerns of judicial economy, convenience and fairness, pursuant to 28 U.S.C.

S 1367(c)(3), the court declines to exercise supplemental jurisdiction over the remaining state law claims. Gilmore v. Amityville Union Free School District, 305 F. Supp.2d 271, 279 (E.D.N.Y.2004) (declining to exercise supplemental jurisdiction where federal claims had been dismissed); Block v. First Blood Associates, 988 F.2d 344, 351 (2d Cir.1993) (concluding that, even though "courts adjudicating cases similar to plaintif's have declined to dismiss pendent claims after the federal claims were dismissed," the district court did not abuse its discretion by "refusing to exercise pendent jurisdiction over plaintiffs' state law claims when their federal claims were dismissed before trial"). Accordingly, plaintiff's remaining claims will be dismissed without prejudice.

Accordingly, the court grants defendant's motion for summary judgment and **DISMISSES** all of plaintiff's federal claims in the amended complaint; plaintiff's remaining state law claims are **DISMISSED** without prejudice.

**IT IS SO ORDERED**

Dated: September 28, 2005
Syracuse, New York

_____
Howard G. Munson
Senior U.S. District Judge

17